Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT

for the

Southern  District of Georgia

Savannah Division

Case No. **CV422  048**

*(to be filled in by the Clerk's Office)*

Sherri A. Banks

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

-v-

Jury Trial: *(check one)*  ☒ Yes  ☐ No

Goodwill of the Coastal Empire

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names.)*

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I.   The Parties to This Complaint

#### A.   The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Sherri A. Banks |
| Street Address | 3631 Chamblee Tucker Rd., Unit 942223 |
| City and County | Atlanta, DeKalb County |
| State and Zip Code | GA 31141 |
| Telephone Number | 770310-0519 |
| E-mail Address | SherriBanks40@yahoo.com |

#### B.   The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Defendant No. 1

Name     Goodwill of the Coastal Empire

Job or Title *(if known)*

Street Address     7220 Sallie Mood Drive

City and County     Savannah, Chatham County

State and Zip Code     GA 31406

Telephone Number     912-657-6789

E-mail Address *(if known)*

Defendant No. 2

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Defendant No. 3

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Defendant No. 4

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

### C.    Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Goodwill (Thrift Store) |
| Street Address | 9701 Ford Avenue |
| City and County | Richmond Hill, Bryan County |
| State and Zip Code | GA 31324 |
| Telephone Number | 912-856-6247 |

## II.    Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☒    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☒    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☒    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Other federal law *(specify the federal law)*:

☐    Relevant state law *(specify, if known)*:

☐    Relevant city or county law *(specify, if known)*:

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## III.    Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐   Failure to hire me.
- ☒   Termination of my employment.
- ☒   Failure to promote me.
- ☒   Failure to accommodate my disability.
- ☒   Unequal terms and conditions of my employment.
- ☒   Retaliation.
- ☐   Other acts *(specify)*: _____

    *(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

May 11, 2022 - August 23, 2022

C.    I believe that defendant(s) *(check one)*:

- ☐   is/are still committing these acts against me.
- ☒   is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☒   race              African American
- ☐   color
- ☒   gender/sex        Female
- ☐   religion
- ☐   national origin
- ☒   age *(year of birth)*    1964        *(only when asserting a claim of age discrimination.)*
- ☒   disability or perceived disability *(specify disability)*

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

> A combination of mental (including depression and
> anxiety) and physical conditons (breathing problems,
> heart condition,  multilateral joint pain  & arthralgias:
> back, hands, arms shoulders, neck wrists and knees
> ankles and feet) status/post treatments for recurrent
> cancer.

E.     The facts of my case are as follows.  Attach additional pages if needed.

Dear Honorable Judge:

I believe this is a case of race, age, gender and disability discrimination as well as retaliation and wrongful firing. This occurred at Goodwill of the Coastal Empire retail store in the Savannah, Georgia region.  I moved from Atlanta to Savannah for the ecommerce lister position in Feb. 2021, but now have returned to Atlanta since being fired.

I was wrongfully fired from my job on August 6, 2021 after complaining about discrimination in the form of hostile environment "N" word radio played by supervisor on/about May 11, 2021.  Hostile environment and retaliation continued following that until August 2, 2021 when I was sent home "no work" for me per department manager.

I had requested temporary reassignment from the department director and HR department which was ignored.  I received a call from a company VP after being sent home "no work."  VP said she had "come across my file" in HR and invited me to meet with her in Corporate office to "discuss my future" with the company. She said she would call back later with date and time.   When she called back, she said the meeting would be August 6, 2021 and that she would not be attending.   She said it would be attended by department manager and HR.

I arrived for the meeting on August 6, 2021.  It was attended by the department manager, her boss, and the compliance officer for the company.   The HR representative with whom I had interacted in the past and who was slated to be there was absent "due to illness".

I was told that I was terminated because I wanted to get out of the department so bad.  I responded that I asked for temporary reassignment for relief from discrimination and retaliation and what should be ongoing investigation.  The former employer did not provide a clear reason for firing.

After weeks of delay providing the separation notice which I requested, I received the notice; however, it falsely stated that I "resigned."   I emailed back to HR stating no, I did not resign.  I was called into the office and fired.  You need to put the reason down for the firing.  A second separation notice was provided that said I left employment "because I didn't like the work environment." Again, the implication was that I resigned; notably, under circumstances that would bar me from eligibility for unemployment benefits.  This after the compliance manager had told me at the meeting that they would not oppose my unemployment.

I inquired with EEOC on/about August 2, 2021.  I had a phone interview with an EEOC representative, Mr. C. Harris, on November 16, 2021.  I received an email dated November 25, 2021 notifying me of dismissal with 90 days rights to sue.

While I received an email dated November 25, 2021 notifying me of dismissal with 90 days rights to sue; it was my impression that I would be receiving the actual letter from EEOC by USPS where upon receipt would thereby establish my deadline of 90 days to sue.  I never received an actual letter from EEOC about rights to sue and dismissal.

I tried to find an attorney to file on my behalf; however having moved back to Atlanta, I was unsuccessful despite contacting several attorneys. Please consider these circumstances and decide in my favor to extend the 90 days as needed to be considered timely filing the lawsuit.

Thank you.

Best regards,

Sherri Banks

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.   Exhaustion of Federal Administrative Remedies

A.   It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

November 16, 2022

B.   The Equal Employment Opportunity Commission *(check one)*:

☐   has not issued a Notice of Right to Sue letter.

☒   issued a Notice of Right to Sue letter, which I received on *(date)*   11/25/2022   .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.   Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☒   60 days or more have elapsed.

☐   less than 60 days have elapsed.

## V.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

I am seeking: 1) trial by jury, 2) back pay 3) front pay, 4) compensatory damages, 5) punitive damages, and 6) injunctive relief (to prevent future discrimination). I also seek training of store level employees, human resources representatives and high-level executives involved along with policy adjustments to prevent discrimination and retaliation in the future.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## VI.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.       For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        2/22/2022

Signature of Plaintiff
Printed Name of Plaintiff    Sherri A. Banks

### B.       For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: **Sherri A. Banks**
**P. O. Box 942223**
**Atlanta, GA 31141**

From: **Savannah Local Office**
**7391 Hodgson Memorial Drive**
**Suite 200**
**Savannah, GA 31406**

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **415-2021-01235** | **C. A. Harris,**<br>**Investigator** | **(912) 358-2789** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

Omayra Padilla *Digitally signed by Omayra Padilla*
*Date: 2021.11.25 09:27:06 -05'00'*

11/25/2021

Enclosures(s)

**Omayra Padilla,**
**Director**

*(Date Issued)*

cc: **Laurie Villegas**
**Human Resources Manager**
**GOODWILL**
**9701 Ford Avenue**
**Richmond Hill, GA 31324**

Enclosure with EEOC
Form 161 (11/2020)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *issued* to you (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – not 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.**  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability.  *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➤ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➤ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)),  **"major life activities"**  now include the operation of major bodily functions, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

➤ **Only one** major life activity need be substantially limited.

➤ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➤ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

➤ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

➤ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

➤ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

➤ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➤ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*   For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 415-2021-01235 |

and EEOC

_State or local Agency, if any_

| Name _(indicate Mr., Ms., Mrs.)_ | Home Phone | Year of Birth |
|---|---|---|
| **MS. SHERRI A BANKS** | **770-310-0519** | **1964** |

| Street Address | City, State and ZIP Code |
|---|---|
| **P. O. BOX 942223, ATLANTA,GA 31141** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (_If more than two, list under PARTICULARS below._)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| **GOODWILL OF THE COASTAL EMPIRE** | **501+** | **(912) 659-0675** |

| Street Address | City, State and ZIP Code |
|---|---|
| **9701 FORD AVENUE, RICHMOND HILL, GA 31324** | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

**DISCRIMINATION BASED ON** _(Check appropriate box(es).)_

☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☒ RETALIATION  ☒ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION

☐ OTHER _(Specify)_

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **05-11-2021**   Latest **08-06-2021**

☐ CONTINUING ACTION

THE PARTICULARS ARE _(If additional paper is needed, attach extra sheet(s)):_

**I.**      **I began working for the above-named employer on March 1, 2021, as an Ecommerce Lister. I had performed the essential duties of my position satisfactorily. On or about May 11, 2021, My Supervisor Kelsey Law was listening to loud offensive music that contained the N word. I objected to this and complained to management. After my complaint, I was subjected to retaliation to include but was not limited to; being harassed, excluded from and prohibited to speak to my coworkers, not being given adequate training, being denied the use of the elevator due to my medical condition, having a dead cockroach placed in my unsafe chair, and ultimately terminated on August 6, 2021.**

**II.      No reason explanation was given for the treatment detailed above.**

**III.      I believe I have been discriminated retaliated against because of my race, African American, sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended. I believe I have been discriminated and retaliated against due to my disability, in violation of**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – _When necessary for State and Local Agency Requirements_ |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE _(month, day, year)_ |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 415-2021-01235 |
| | | and EEOC |

*State or local Agency, if any*

**the Americans with Disabilities Act of 1990, as amended. I believe I have been discriminated and retaliated against because of my age, 57, in violation of the Age Discrimination in Employment Act of 1967, as amended.**

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:**  Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.   **FORM NUMBER/TITLE/DATE.**  EEOC Form 5, Charge of Discrimination (11/09).

2.   **AUTHORITY.**  42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.   **PRINCIPAL PURPOSES.**  The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.   **ROUTINE USES.**  This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.   **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.**  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

February 22, 2022

# Sherri Banks vs. Goodwill of the Coastal Empire – Savannah, GA Region—Letter to Judge & EEOC Timeline—Pro Se Filing

**My Address & Phone:**
Sherri Banks
3631 Chamblee Tucker Rd. Unit 942223
Atlanta, GA 31141
Telephone:  (770) 310 - 0519

**Store Location:**
Goodwill of the Coastal Empire
9701 Ford Ave
Richmond Hill, GA

**Corporate Office Location:**
Goodwill of the Coastal Empire
7220 Sallie Mood Dr.
Savannah, GA  31406

**Dates of Employment:**  March 1, 2021 – August 6, 2021

**Job Title:**  Ecommerce Lister

**Salary:**  $12.50 hourly to start; pay increase to $13.00 hourly mid-July 2021

**Company Size:** 500 + employees

**Areas of Discrimination:**  Race, age, gender, disability and retaliation; wrongful firing

**EEOC Decision:**   Determination of no reasonable cause issued via email 11/25/2021.

Dear Honorable Judge:

I believe this is a case of race, age, gender and disability discrimination as well as retaliation and wrongful firing. This occurred at Goodwill of the Coastal Empire retail store in the Savannah, Georgia region.  I moved from Atlanta to Savannah for the ecommerce lister position in Feb. 2021, but now have returned to Atlanta since being fired.

I was wrongfully fired from my job on August 6, 2021 after complaining about discrimination in the form of hostile environment "N" word radio played by supervisor on/about May 11, 2021.   Hostile environment and retaliation continued following that until August 2, 2021 when I was sent home "no work" for me per department manager.

Sherri Banks<br>
3631 Chamblee Tucker Rd. Unit 942223<br>
Atlanta, GA 31141<br>
Telephone: (770) 310-0519

1 of 14

I had requested temporary reassignment from the department director and HR department which was ignored.  I received a call from a company VP after being sent home "no work."  VP said she had "come across my file" in HR and invited me to meet with her in Corporate office to "discuss my future" with the company.  She said she would call back later with date and time.   When she called back, she said the meeting would be August 6, 2021 and that she would not be attending.  She said it would be attended by department manager and HR.

I arrived for the meeting on August 6, 2021.  It was attended by the department manager, her boss, and the compliance officer for the company.   The HR representative with whom I had interacted in the past and who was slated to be there was absent "due to illness".

I was told that I was terminated because I wanted to get out of the department so bad.  I responded that I asked for temporary reassignment for relief from discrimination and retaliation and what should be ongoing investigation.  The former employer did not provide a clear reason for firing.

After weeks of delay providing the separation notice which I requested, I received the notice; however, it falsely stated that I "resigned."  I emailed back to HR stating no, I did not resign.  I was called into the office and fired.  You need to put the reason down for the firing.  A second separation notice was provided that said I left employment "because I didn't like the work environment."  Again, the implication was that I resigned; notably, under circumstances that would bar me from eligibility for unemployment benefits.  This after the compliance manager had told me at the meeting that they would not oppose my unemployment.

I inquired with EEOC on/about August 2, 2021.  I had a phone interview with an EEOC representative, Mr. C. Harris, on November 16, 2021.  I received an email dated November 25, 2021 notifying me of dismissal with 90 days rights to sue.

While I received an email dated November 25, 2021 notifying me of dismissal with 90 days rights to sue; it was my impression that I would be receiving the actual letter from EEOC by USPS where upon receipt would thereby establish my deadline of 90 days to sue.  I never received an actual letter from EEOC about rights to sue and dismissal.

I tried to find an attorney to file on my behalf; however having moved back to Atlanta, I was unsuccessful despite contacting several attorneys.  Please consider these circumstances as and decide in my favor to extend the 90 days as needed to be considered timely the lawsuit.

Thank you.

Best regards,

Sherri Banks

Sherri Banks
3631 Chamblee Tucker Rd. Unit 942223
Atlanta, GA 31141
Telephone: (770) 310-0519

## Complaint and Timeline as I reported to EEOC through online Portal:

**What reason(s) were you given for the action taken against you?**

I was fired in retaliation on Friday, August 6, 2021 in a meeting at headquarters in Savannah, GA attended by Director Chris Karamalikis, Richmond Hill Ecommerce Department Mngr. Michele Hudson, and Compliance Officer Joe Janufka.  The real reason I was fired is for complaining and reporting discrimination based on race, disability, age and gender individually, and collectively as intersectional discrimination and retaliation that occurred between May 12, 2021 and August 2, 2021.

At the August 6, 2021 termination meeting, Director Chris Karamalikis said I was being fired because I "wanted to leave so bad".

However, HR provided a different excuse.  The two separation notices provided by HR Shirley Alexander on Monday, August 23, 2021 via email both falsely and incorrectly indicate reason for separation "resigned" and "resigned... dissatisfied with working conditions".

In the interim, I was falsely sent home or told to not report due to "no work product" and or "no work" available while less senior coworkers were brought in to work or permitted to remain at work.  In the case of fake discipline sessions, Mngr. Michele made false allegations about deficiency in my work without providing evidence as I requested and blamed me for errors made by another coworker, Princess.

On August 2, 2021, my last day in the office/workroom at Richmond Hill store, Mngr. Michele sent me home because she said that Director Chris Karamalikis had decided disability accommodation which I permitted me to accept the job was withdraw and I would be required to work on the shipping area doing longer standing and lifting.

Mngr. Michelle refused to train me on the picture taking part of the lister/shipper job that I was initially hired to do.  She subsequently added that she was sending me home because I was not trained how to do that part of the job and she had no one to train me.  Although she did offer to have coworker Dylon train me in the shipping area for standing/lifting work that I was unable to perform.

I maintain that I was fired for complaining and reporting discrimination based on race, disability, age and gender individually, and collectively as intersectional discrimination and retaliation that occurred between May 12, 2021 and August 2, 2021.  I have prepared a discussion list of 10 adverse actions taken against me which I attempted to include here but was prevented (likely due to length).

Please advise me how to forward that list to you so that it is included with my file for review.

**List of 10 Actions Taken Against Me/Adverse Actions:**

Sherri Banks
3631 Chamblee Tucker Rd. Unit 942223
Atlanta, GA 31141
Telephone: (770) 310-0519

On May 12, 2021, I was subjected to hostile environment radio by Supv. Kelsey Law when she choose to play loud "N" word radio on the computer in which several songs heavily used the offensive term "nigger". Supv. Kelsey turned-off the music; however, when I asked her why she would play that in the workroom, she did not respond. Her stare left me feeling uneasy. As a result, I complained about this to Mngr. Michele Hudson who forwarded my concerns (without acting) to Goodwill chain of command including Director Chris Karamalikis and HR Shirley Alexander. After that, I was subjected to multiple acts of retaliation in the workroom, excused away by Mngr. Michelle and enabled by Director Karamalikis and HR Shirley Alexander up to and including termination from employment on August 6, 2021.

Interim retaliation included:

1) Supv. Kelsey Law demanded that I use her personal cell phone to enter my employee password protected account/ADP to log-out from work at the end of a shift.   When I expressed reluctance to enter my personal information in her phone, Supv. Kelsey lunged toward me with her upper body and made comments suggesting I was insubordinate for declining to use her phone. Supv. Kesley angrily said, "What do you mean no!  I reported the incident to Mngr. Michele, that Supv. Kelsey's response in the situation seemed out of proportion to the problem at hand, especially given that there were office forms for documenting log-out, and since Mngr. Michele's (company) computer was still available to be used.  I said that it seemed Supv. Kelsey was still angry because I did in fact say "No" to the "N" word music and report her.  Mngr. Michele dismissed my concerns and supported the position that I was being insubordinate for saying "No" to Supv. Kelsey.  Mngr. Michele said that Supv. Kelsey was my boss and I should have followed her instructions.  Mngr. Michele then when on to gaslight me saying that there was no sensitive information in my password protected employee account/ADP to be compromised. This signaled for me that Mngr. Michele and Supv. Kelsey were coordinating retaliation.  I then reiterated to Mngr. Michele this was retaliation at which point she said she would notify HR using an ominous tone that suggested that I would be in trouble for reporting retaliation. (Ultimately I ended up fired/terminated, so her tone was foreshadowing and on point; though I did not know it at the time.)

2) I was sent home "no work" and/or "no work product", contacted by text and/or email on numerous occasions by Mngr. Michele with what was later proved to be a false excuse of "no work" and/or "no work product" while lesser seniority employees (Princess and Nia, **both coworkers; 1 black female and 1 white female, respectively; who were full time**) were allowed to stay at work and/or report to work.  In one example, Mngr. Michele sent me a text message or email about an hour before I was due at work telling me not to report due to "no work product".  I did not check my phone in the last hour prior to my shift due to preparing to report to work.  When I arrived at work, Supv. Kelsey looked like she was seeing a ghost.  She told me that I should not be there.  I asked why.   Mngr. Michele came into the conversation and said

because she sent me a text not to come because there was no work product.   At that point the conversation went silent because as I looked to my right, there was a wall of totes/work product waiting to be processed.   I asked Mngr. Michele how that could be true.   She said the totes had come in since she sent me the message but that I would still have to leave for the same reason.   Meanwhile, at least one coworker who had less seniority was allowed to stay, that being Princess.

3) I was subjected to fake discipline sessions where Mngr. Michele refused to produce concrete evidence of the many errors she said I was making in one case, nor was she able to show evidence of deficient productivity which she alleged and I countered with the fact that I was keeping track of my own numbers and that my records do not bear out deficient productivity. I was twice sat down in front of coworkers and Supv. Kelsey and verbally warned that my work was insufficient and later that I had made the same error multiple times over the past months. I asked why I had not been notified in the past so that I could avoid making the error for months. There was no response.  There point seems to have been was to create a complaint against me out of nothing and backdate it to give them an excuse to get rid of me.  These warnings were given in front of coworkers, including in the case of alleged same error multiple times over months, the coworker who was actually responsible for the error which I had brought to the attention of Supv. Kelsey a number of times, as well as to the attention of Mngr. Michele.

4)  I was subjected to hostile environment engaging of coworkers (Princes and Jasmine). After HR had come to meet with all ecommerce employees to establish the company position on hostile environment ,discrimination and retaliation,  Mngr. Michele sat me down for the first of the two aforementioned fake discipline sessions.   In that session, which was attended by Mngr. Michelle and Supv. Kelsey and performed in front of coworker Princess; Mngr. Michelle told me that I was to no longer permitted to speak to my coworkers.  More specifically:

May 27, 2021 (Thursday) – Mngr. Michelle came to me at my desk (just three days after the hostile environment/discrimination "training session") telling me not to speak to the two black women (lister/photographers Jasmine and Princess) employed there.  I asked Mngr. Michelle what she meant by that.  She said that it meant what it sounded like, I was not to speak to them nor ask questions about the listing they submit.  She said I should ask Supv. Kelsey when I have questions.   She also said that she had just added some additional templates and template information requirements that I would need to fill it.  She also said that my productivity was not enough.

For understanding, two answers to anticipated questions: 1) my questions to coworkers was mostly about required information that they would have left off their listing item (such as

measurements, color, images) that they forwarded; and 2) questions to Jasmine (the more senior of the two) would be about listing process that I could not readily find an answer for in my notes which I took during the day of training with Supv. Kelsey and on subsequent work days to that point (when Supv. Kelsey was not readily available).

I pointed out to Mngr. Michelle that Supv. Kelsey is often in-and-out of the workroom and that waiting for her would delay my processing. She simply repeated that I shouldn't speak to or ask questions of Jasmine and Princess in the future. (After that conversation, I noticed going forward, that literally the two women no longer said hello and goodbye when I said it to them. It seemed like they were afraid to "speak" to me; especially Princess seemed afraid).

Trying to avoid asking Jasmine and Princess questions while keeping my productivity meant that I had to get up and down from my desk regularly.  I tried to do this for a while.  Eventually realized that the stress of doing that was not only delaying processing time for me, it was also negating my disability accommodation of sit-down work that I requested and was agreed to when I was hired.  I slowly began asking Jasmine and Princess questions again.  Jasmine would answer, quite professionally; though still not speaking hello or goodbye.  Princess, the newer employee, would seemed really agitated, even angry sometimes just to provide a color, or model number, or measurement.  Now I realize she may have been stressed out about keeping her job perhaps having been given similar instructions as I had received, though in reverse; not to talk to me.

Mngr. Michelle also said (same conversation) that my numbers were unsatisfactory. She said I needed to improve.

I responded that I did not understand what she meant since I tracked my own numbers and they had done nothing but improve since I started working at Ecommerce. Despite, fluctuating work productivity based on who was listing/photographing on a given day, I consistently listed live most or all of what I received.   Mngr. Michelle offered no examples of my lack of productivity. In hindsight, I understand this was an example of intimidation and gas lighting.

While the timing of increased work requirements and instructions not speak to and ask questions of co-workers who were submitting items to be listed seem suspect, it is only in hindsight that I am sure that this is the point that retaliation kicked in and the train of hostile environment discrimination was in full operation.  Mngr. Michelle was trying to make it harder for me to be productive and keep up by adding additional information that I would be required to input into templates while simultaneously making it more difficult for me to timely obtain that information when lister/photographers (such as Jasmine & Princess) by preventing me from speaking with them and asking questions of them in real time to get the information.  Waiting for Supv. Kelsey, or even leaving my station to find her would cause delays in my processing.  I now believe Mngr. Michelle was intentionally trying to slow-down my productivity all the while

cautioning me that I was not productive enough despite actual numbers that refute her allegation of not productive enough.

June 3, 2021 to July 6, 2021 – I continued productively in my listing role.  During this time I was daily reminded that I was an outsider as Jasmine & Princess continue with hostile behavior (as aforementioned) not responding when I said hello and goodbye.     What I noticed during this time was that Supv. Kelsey made it a point to say hello and goodbye in a good tone of voice, even cheerfully.  This really stood out in an environment where Jasmine & Princess never responded.  At the time, I chose not to judge the behavior as being related to my complaint about "N" word radio and that fallout, I just noticed it and eventually limited my hello and goodbye to the only one in the workroom who said it to me, that being  Supv. Kelsey. I satisfied myself that as long as they responded with the information that I needed to do my work that I wasn't going to worry about them.  I do see it as part of the hostile environment campaign driven by Mngr. Michelle and provided shade for proliferating by Director Chris Karamalikis.

5)  I was denied training to do the picture taking part of the lister/shipper role and subsequently sent home on Monday, August 2, 2021 by Mngr. Michele with the excuse that since I was not trained to take the pictures for online display they had no work for me.  She added that per her boss, Director Chris Karamalikis, the role that I had been performing (organizing photos and revising ad content then uploading the live product to the website) was no longer going to be separate from the picture taking and initial product identification draft. I pointed out to Mngr. Michele that I had asked her for this picture taking training (which was standard for lister/shipper job role) but she had denied the training insisting that going forward it was more efficient and productive to perform the roles separately.  I asked her to just allow me to train for a few minutes right then and that I was sure I could incorporate that step.  Mngr. Michele again declined to train me, stating that no one was available to train me.   Mngr. Michele went on to say that she would permit me to go back in the shipping area and train with coworker Dylon on the shipping process and be reassigned to shipping.  I pointed out to her that working on the shipping dock would require longer periods of standing, physical moment and lifting (which I was unable to perform due to health) and from which I was granted leave through disability accommodation when I was hired at Goodwill of the Coastal Empire. Mngr. Michele again stated that they were going back to the way they use to do things (per Director Chris Karamalakis) and that I should leave. I left that day, August 2, 2021.  That was the last time I was in the office.

6)  I was subjected to disability discrimination in at least three forms after complaining about discrimination.  a) As described in item # 5 above I was ultimately denied the accommodation that led me to accept the position and move from Atlanta to Savannah. b) I was denied use of the elevator to access the workroom on second floor from the first floor of the store. Prior to

Sherri Banks
3631 Chamblee Tucker Rd. Unit 942223
Atlanta, GA 31141                                                                    7 of 14
Telephone: (770) 310-0519

this, I had been using the elevator (necessary due to breathing problems and bilateral degenerative knee and back conditions of aging) with no problem. Then one morning, I had a long wait for the elevator to come down. I eventually called upstairs and asked Mngr. Michele to unlock the elevator and send it down for me.  She never said that she would, instead I heard her scream and the phone was disconnected.  It took a couple more minutes for the elevator to come.   That evening when it was time for me to leave, the elevator was locked and did not open when I pushed the button.  (The elevator was not usually locked at that time).  Mngr. Michele stood amidst the totes near the elevator.  Supv. Kelsey and workroom coworkers stood around waiting for the showdown that Mngr. Michele had set in motion by locking the elevator early.   I asked Mngr. Michele if she would unlock the elevator so that I could leave.  Mngr. Michele told me "No!"  She demanded that I "Take the stairs from now on."  I reminded Mngr. Michele that for health reasons I needed to take the elevator and had been doing so with no problem for months before this.  At that point, Mngr. Michele stormed into her office to get the key and unlocked the elevator.  After that the elevator would periodically be locked when I arrived for work and I would have to call for access.  c) Approximately June 1st and 2nd 2021, as an act of hostile environment and intentional recklessness towards my health, I was left out of the information loop when the company decided that masks were no longer required.  I reported to work to find coworkers, supervisor and manager walking around unmasked.  Mngr. Michele never volunteered any communication to me......such as the instructions the other coworkers had obviously received.  It was the next day (Thursday, June 3, 2021) when I went up to Mngr. Michele and inquired what the new policy was.  In the interim, with my pre-existing conditions I had more risk and needed to know for my own decision making.  I was put at risk without the information I needed to feel protected in the unmasked environment.  I believe this set-up was rooted in an earlier interaction where Supv. Kelsey and Mngr. Michele had made comments that they would be receiving the vaccine and that they didn't like wearing masks. Supv. Kelsey had turned to me and asked me directly whether I would be getting vaccinated.  I said due to pre-existing health conditions I was weighing my options about the vaccine but had no problem wearing the mask as long as necessary.  Supv. Kelsey responded sarcastically, "So you're going to wait and let everyone else take the (risk of) vaccine and get your protection off others." It was a cutting mis-characterization of me which I redirected from by restating that I would be weighing my options based on pre-existing health conditions.  Supv. Kelsey's comment was hostile.  Sup. Kelsey leading conversations and asking who is getting the vaccine next became a regular office discussion from which I withheld engagement.   So I do believe that the exclusion of me from the information loop on this was meant to rattle me.

7) On Wednesday, July 28, 2021, I arrived to my desk to find a dead roach placed nearly center in my chair.  They wanted me to see it.  It was an old, dried and flattened roach that likely came from one of the totes.  Except that an old, dried, and flattened roach cannot place it's self in a chair.  I went into Mngr. Michele's office and reported that the roach was in my chair and that it

had to be placed there by someone in the workroom.  I said this is more hostile environment and harassment.  Mngr. Michele said, "I'm not doing this with you today".  She then grabbed her phone and said she was calling HR.   I went to my desk, dusted the roach from my chair. Cleaned the chair with paper towels and began working. Within a few minutes Mngr. Michele came out into workroom, and publicly/openly declared to me that "HR said bugs crawl into chairs and die.  What do you want us to do?"  I told Michelle its retaliation. I asked Mngr. Michele who is was that she spoke to at HR.  She refused to say.  I then told Mngr. Michele that I wanted HR to investigate it.  I said, coming out here in front of everybody and dismissing me is not investigating.  I want you all to determine who is behind it being put the cock roach in my chair and discipline accordingly. After all, there is a ceiling camera that takes direct shot at my desk area.   HR could readily look at the tape and identify the individual.  Even as Mngr. Michele stood speaking with me she noticed that the old, dried, and flattened cock roach was still on the floor, just at her feet.  She looked down, saw it and grimaced as she moved aside.   It was too much for her to see on the floor at her feet but she was dismissing my concerns that someone had placed it in my chair.  Mngr. Michele came to me a couple hours later and told me to leave, "no work."  I later informed HR Shirley Alexander of the incident in an email to which she did not respond on Friday, July 30, 2021. In a (before work) meeting with HR Shirley Alexander on Monday, August 2, 2021 I asked her if she had received my email about the cock roach/hostile environment incident.  She acknowledged receipt of the email about the cock roach stating that she did not know about the incident prior to receiving the email.  I asked her who it was at HR that Mngr. Michele spoke to that day.  HR Shirley Alexander stated she did not know. I asked her to investigate the cock roach incident.  She said that she would.  As far as I know, there has been no investigation of the hostile environment cock roach incident.   After leaving the meeting with Ms. Alexander (which she had arranged so that I could sign-off on letter advising me of their finding on previously reported retaliation) I drove to the Richmond Hill store.  At my desk, I found that the drawer were I kept a pencil cup, napkins and paper for notes was cleared out. My belongings were gone.  I decided not to give them the satisfaction of questioning this. Shortly after arriving, Mngr. Michele came to me and said I should leave as described in item # 5 above.

8)  More hostile environment and retaliation. On Tuesday morning, August 3, 2021, I received a call from VP Callaway-Penny, of whom I previously had no knowledge.  It was the day after Mngr. Michele hand sent me home stating no work for me and that going forward there would be no (disability accommodation).

VP Callaway-Penny identified herself and her role of vice-president of donated goods. She said she had come across my file in HR.  She said she wanted to meet with me to discuss my future with Goodwill. I told VP Callaway-Penny that I had been sabotaged at work and experienced such hostile environment.  I added that I did not think they were going to allow me to come

back based on Mngr. Michele's comments the past date.  VP Callaway-Penny said that she would be having some input going forward; and that to start, she would get me paid for the rest of the week while things are sorted out.

I was optimistic hearing from her.  Surely, I thought, at this level of involvement things can be worked-out amicably.  I agreed to meet with her and the others.

VP Callaway-Penny said we would be discussing all my concerns at the meeting.  She said to expect to meet with them sometime around mid-week.  The next time I heard from her, it was about Wednesday August 4, 2021.  She called stating that she would not be attending the meeting.  She said it would be attended by Director Chris Karamalakis, Mngr. Michele Hudson and HR Shirley Alexander.  I replied that I only agreed to meet because she would be there and that I saw no way forward in a conversation with the individuals she listed.  Ms. Callaway-Penny assured me it would be a productive conversation, leveraging with a reminder that she had already (acted on my behalf) to get me paid for the week.

Again, I agreed to attend.  I still had no idea that it would be a straight up firing/termination of my employment.

On Friday, August 6, 2021, I sat down at a meeting with Director Chris Karamalakis, Mngr. Michele Hudson and Compliance Officer Joe Janufka  (whom the VP had not mentioned) and minus HR Shirley Alexander (who was said to be out sick). The meeting was short, less than 15 minutes.

Director Chris Karamalakis and Mngr. Michele Hudson were both visibly angry and hostile.  The two of them were in the room all of three minutes or less before leaving. There was no productive conversation.  Compliance Officer Janufka made comments to suggest that I was fired without saying it directly.  I asked them, "Am I being fired."  Mr. Janufka stated yes. Both women nodded in agreement.  I asked why I was being terminated.  Director Chris Karamalakis through clinched jaws barked, "You wanted to leave so bad."  I objected stating, "No, I want to work with Ecommerce.  I just wanted relief from hostile environment and harassment."  With that, Mr. Janufka ushered the two women out of the room.

Mr. Janufka then went on to outline their terms.  He stated I would be given two weeks of severance pay and that Goodwill would not oppose my unemployment. He also said that I could apply for other jobs at Goodwill of the Coastal Empire.  He said that I could use their (public) career services and that Mr. Derill Allen would be available to personally assist me with that, adding that my resume already looked good though.

I told Mr. Janufka that I was confused as to why I was being fired and not transferred during investigation of my complaints.  I asked him whether this was standard procedure for employees to be called in and fired under similar circumstances while still eligible for

employment with the company.   He just kept saying that I could apply for jobs at Goodwill (internally) and externally.

Weeks later, on Monday, August 23, 2021, HR Shirley Alexander produced not one, but two separation notices that indicate reason of separation "resigned" and "resigned....dissatisfied with working conditions", both of which are false and misleading and would result in ineligibility for unemployment if true. Ms. Alexander's intent to deceive the state of Georgia and cast me as having acted "willy-nilly" to end my own employment (thereby blocking my eligibility for unemployment) was solidified with her resubmission of the separation notice with the same false/misleading/incorrect reason for separation given as "resigned" and "dissatisfied with working conditions."

At that point, I understood that Mr. Janufka was engaging in lying doublespeak.  He said I could apply for jobs (internally) at Goodwill. Applying is one thing, being hired is another.   Similarly, when he told me that Goodwill "would not oppose unemployment", what he meant was that my unemployment would be thwarted out the gate with false reason for separation negating any need to formally oppose unemployment.  Any other reading would be illogical and insensible based upon the history of facts.

VP Callaway-Penny's reaching into the situation  when she called me on the phone to personally orchestrate my termination was intentional overkill apparently intended to relieve the rage of her white female Ecommerce subordinates including Mngr. Michele and Director Karamalikis. In doing so, she multiplied retaliation.  Furthermore, Mr. Janufka's sending me on a wild goose chase applying for jobs at Goodwill and pursuing unemployment benefits that would not materialize given reason of separation "resigned" and "resigned....dissatisfied with working conditions" was intended to  stymy, overwhelm and inflict pain in my life far beyond Goodwill of the Coastal Empire employment.

Director Chris Karamalikis, HR Shirley Shirley Alexander, Mngr. Michele Hudson and Supv. Kelsey Law each had first-hand knowledge of my history of two-time cancer survivor with secondary heart condition and breathing problems, as wells as a compromised immune system which together had left me disabled from work. VP Callaway-Penny and Mr. Janufka are responsible as they "should have known" that their actions would have adverse short-term and/or long-term impact on the health of a self-identified person with disability status.

Despite their firsthand knowledge of my disabling, stress-triggered illness; they acted individually and collectively in a manner to inflict as much trauma as possible through hostile environment discrimination, retaliation, through to termination and beyond. Even in the most optimistic interpretation; they acted not just to force me out, but also with indifference and intent to leave an indelible mark on my mental & emotional well-being and physical health. In

doing so, they put me at risk for adverse short-term and/or long-term impact on my health up to and including mental health demise, cancer recurrence and death.

Seen in this light, what they were doing feels criminal, and I hope that EEOC and eventually the justice system will hold them accountable in a manner that calls-out their war of retaliation against me for what it is, corporate lynching.

9) I was fired as the most fatal act of retaliation on Friday, August 6, 2021.

10) More hostile environment and retaliation. On August, 23, 2021, I received two separation notices (from HR Shirley Alexander) as mentioned above that were booby trapped with false/misleading and incorrect reason for separation to thwart unemployment.

Was anyone in a similar situation treated the same, better, or worse than you? (For example, did someone else apply for the same job you did, have the same attendance record or the same performance, and receive better, worse, or the same treatment as you?) If so, please provide each person's name and a brief description of why you believe they were treated the same, better, or worse than you.

As far as I know, I was the only African American senior adult with disabling health conditions hired in the Ecommerce Department at Richmond Hill. I was the only senior citizen. I can say that Princess and Jasmine were permitted to frequently laugh and talk to each other, in the case of Princess permitted to talk on the phone through a headset for long periods of time, throughout the day while Mngr. Michele instructed me not to speak to my coworkers including about work. Princess (bf, age 20's) and Nia (wf, age 20's) were permitted to stay and work while I was sent home and/or report to work when I was told not to come in Princess (bf, age 20's) and Nia (wf, age 20's), both with lesser seniority were given full training to take pictures and begin the initial product draft while I was denied training and sent home as late as August 2, 2021 because I was not trained. In the case of Princess, it was clear that she was protected from her errors in that I was blamed for them and my attempts asking Supv. Kelsey and Mngr. Michele to convey to her the correct procedure as it should be done was falling on deaf ears.

Please provide the name(s) and email and/or phone number of anyone who will support your claim, and briefly describe the information this person will provide. (For example, Sam Smith, sam.smith@gmail.com, will confirm both me and John Doe were disciplined for being late.)

I was effectively isolated from cultivating a working association with coworkers by Mngr. Michele when she instructed me not to speak to coworkers, and by their behavior particularly Jasmine (bf age 20's) and Princess (bf age 20's), they were told not to speak to me. I doubt whether coworkers will support

my statements.  Furthermore I have no contact information on them.  I do not even know their last names.

**I can provide department and HR contact information as follows:**

## Ecommerce Director @ Goodwill of the Coastal Empire, Savannah Region

Director Chris Karamalikis (white female; approx. age 50's)
Email:  ckaramalikis@goodwillsega.org
Telephone: 912-657-6789


## Ecommerce Department @ Goodwill of the Coastal Empire in Richmond Hill, GA

Ecommerce Department  Mngr. Michelle Hudson (white female, age 40's)
Email: mhudson@goodwillsega.org
Telephone:  912-856-6247

Ecommerce Department  Supv. Kelsey Law (Asian/Puerto Rican female, age 20's)
Email: kklaw@goodwillsega.org
Telephone:


## Human Resources Department – Goodwill of the Coastal Empire

1) HR Recruiter Ernest Chisholm (BM, age 30's).  I sent Mr. Chisholm an email requesting temporary transfer and or reassignment on Wednesday, July 8, 2021. I never received a response.
Email:  echisholm@goodwillsega.org
Telephone: 912-663-6495


2) HR Admin Darius  ?  (black male, age 30's).  He was present in the workroom the day of "N" word radio incident.
Email:  unknown
Telephone: unknown


3) HR Associate Relations Mngr. Shirley Alexander (black female age 70's)
Email:  salexander@goodwill.org
Telephone: 912-354-6611 (press 5 for HR); or 912 659-0695


4) Compliance Officer Joe Janufka  (white male, age 60's -70's)
Email: jjanufka@goodwill.com

Sherri Banks
3631 Chamblee Tucker Rd. Unit 942223
Atlanta, GA 31141
Telephone: (770) 310-0519

13 of 14

Telephone: 912-354-6611

## Corporate Vice President of Donated Goods@ Goodwill of the Coastal Empire

VP Jessica Callaway-Penny (white female, 40's).
Email:
Telephone:

Sherri Banks
3631 Chamblee Tucker Rd. Unit 942223
Atlanta, GA 31141
Telephone: (770) 310-0519

14 of 14

Sherri Banks
P.O. Box 942223
Atlanta, GA 31141



RECEIVED

U.S. Marshals Service
Savannah Georgia

ATLANTA MAIN POST OFFICE
US 8 ATLANTA GA
FEB 22 2022



**UNITED STATES POSTAL SERVICE®**  |  **PRIORITY MAIL EXPRESS®**

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)            PHONE ( )  770-310-0514

Sherri Banks
3631 Chamblee Tucker Rd.
#942223
Atlanta, GA 31141

**DELIVERY OPTIONS (Customer Use Only)**
☐ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)            PHONE ( )

Savannah Court house Annex
124 Barnard St.
Savannah, GA 31401
Attn: Clerks Office

ZIP + 4® (U.S. ADDRESSES ONLY)
3 1 4 0 1

⇧ PEEL FROM THIS CORNER

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

**PAYMENT BY ACCOUNT (if applicable)**
USPS® Corporate Acct. No.      Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**

PO ZIP Code          Day  ☐ 1-Day  ☐ 2-Day  ☐ Military  ☐ DPO

Scheduled Delivery Date (MM/DD/YY)   02/23/22    Postage  $ 29.60

Date Accepted (MM/DD/YY)  02/22/22    Scheduled Delivery Time  ☐ 6:00 PM   Insurance Fee   COD Fee

Time Accepted  0625  ☐ AM  ☑ PM    Return Receipt Fee

Special Handling/Fragile      Sunday/Holiday Premium Fee    Total Postage & Fees   $ 29.60

Weight  12 lbs. ___ ozs.    Acceptance Employee Initials      Live Animal Transportation Fee

DELIVERY (POSTAL SERVICE USE ONLY)
Delivery Attempt (MM/DD/YY)  Time  ☐ AM  ☐ PM    Employee Signature
Delivery Attempt (MM/DD/YY)  Time  ☐ AM  ☐ PM    Employee Signature

LABEL 11-B, MAY 2021    PSN 7690-02-000-9996

EI 302 727 035 US



1007

31401



**U.S. POSTAGE PAID**
PME 1-DAY
ATLANTA, GA
30304
FEB 22, 22
AMOUNT
**$29.60**
R2304H107983-07

